SHATEL CORP., Plaintiff-Appellee,

v.

MAO TA LUMBER AND YACHT COR-
PORATION, Defendant-Appellant.

No. 81–6187.

United States Court of Appeals,
Eleventh Circuit.

Feb. 14, 1983.

Curtis Carlson, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for defendant-appellant.

Richard H. Compere, Hume, Clement, Brinks, Willian & Olds, Ltd., Chicago, Ill., Richard A. Goetz, Hodgson, Russ, Andrews, Woods & Goodyear, Fort Lauderdale, Fla., for plaintiff-appellee.

Before RONEY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Shatel Corporation is a Fort Lauderdale, Florida, corporation in the business of selling and importing yachts. Appellant Mao Ta Lumber and Yacht Corporation is a Taiwanese corporation and a manufacturer of yachts. In 1979 Mao Ta sent corporate officers to the United States to obtain a sales representative for the line of boats it was then manufacturing in Taiwan. Mao Ta contacted the president of Shatel and interested him in a 51-foot sailing yacht. As a result of subsequent negotiations Shatel entered a written agreement with Mao Ta whereby appellant was to manufacture and appellee was to exclusively distribute the 51-foot boat which would be built pursuant to Shatel's specifications and standards and sold under the trademark SKYE. Mao Ta acknowledged that the trademark SKYE would be Shatel's sole property and would not be used by Mao Ta in the promotion and sale of the boat without Shatel's prior written permission. Shatel filed trademark applications in the United States and in twenty-five other countries to register the mark SKYE. Shatel supplied various parts to Mao Ta that were to be incor-

porated into the SKYE 51 boats being manufactured, and Shatel spent substantial sums of money and time in advertising, promoting and selling the 51-foot yacht under the trademark SKYE.

On July 26, 1981, Mao Ta ended the distributorship arrangement because Shatel did not order the minimum twelve vessels in a twelve-month period required by the distribution agreement. Since that date there have been no sales of Mao Ta's 51-foot boat in the United States. On August 4, 1981, Rex Yacht Sales, Inc. of Fort Lauderdale, Florida, sent a Telex to Mao Ta requesting information about its production lines. On August 7, Mr. Tai, the president of Mao Ta, sent a return Telex stating: "THKS UR TLK RCVD. SAILBOATS 36', 41', 46', N', SKYE 51' R UR PRESENT PRODUCTION LINES. HVING NO AGREEMENT IN THE U.S., WE HANDLE ALL BUSINESS." The president of Rex Yacht Sales testified that his impression on receiving this Telex was that he was being offered a SKYE 51. Mao Ta also gave information to Odyssey Yacht Sales of Seabrook, Texas, concerning the boats that it manufactured. Odyssey put out a brochure offering Mao Ta's 51-foot boat as the SKYE 51. The brochure was made up principally of photo-copies from a brochure previously printed by Shatel. There is no evidence that Mao Ta was the source of the brochure, but hull numbers of 51-foot boats in Mao Ta's inventory were included in the brochure.

On August 28, 1981, Shatel filed a complaint in the United States District Court for the Southern District of Florida against Mao Ta for both federal and common law unfair competition and for breach of contract. The unfair competition counts were based on Shatel's claim that Mao Ta had infringed its trademark SKYE. Shatel filed a motion for a preliminary injunction which was limited to the trademark infringement issue.[1] Subsequent to the presentation of testimony, documentary evidence and argument the district court made findings of fact and conclusions of law, and entered an order enjoining Mao Ta, its agents and employees from "the use of the designation SKYE or another designation which will cause confusion as to the vessel's origin and designation."

■ The grant or denial of a preliminary injunction rests within the sound discretion of the district court and is reversible on appeal only for an abuse of that discretion, *Dallas Cowboys Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184, 1187 (5th Cir. 1979), or if contrary to some rule of equity. *Meccano, Ltd. v. John Wanamaker*, 253 U.S. 136, 141, 40 S.Ct. 463, 465, 64 L.Ed. 822 (1920). A preliminary injunction, however, is an extraordinary remedy, and the boundaries within which the district court may exercise its discretion are clearly marked. *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 114 (5th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). The district court should issue an injunction only if the moving party clearly satisfies the following four prerequisites: (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant

---

1. The statutory authority is Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a) which provides that

Any person who shall affix, apply, or annex, or *use in connection with any goods* or services, or any container or containers for goods, *a false designation of origin, or any false description or representation,* including words or other symbols tending falsely to describe or represent the same, *and shall cause such goods or services to enter into commerce,* and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

(Emphasis added.) Federal jurisdiction was based on 15 U.S.C.A. § 1121 and 28 U.S.C.A. § 1338.

outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Id.*

Mao Ta argues that according to the rules of equity the preliminary injunction was improperly granted because the plaintiff's hands were unclean. It claims that Shatel used the federal registration symbol in connection with the mark SKYE in two advertisements when SKYE was not a federally registered trademark in order to ward off others inclined to use the same mark. Shatel replies that its use of the registration symbol was inadvertent and was not done with the intent of deceiving or misleading the public. Although SKYE was not a registered trademark in the United States at the time of these ads, it had already been registered in several countries. Mr. Atlass, the president of Shatel, testified that he thought the registration symbol could be used since the ads, which appeared in *Yachting Magazine,* would be distributed in countries where the mark was registered.

■ The law on "unclean hands" in a trademark case is well stated in *Worden & Co. v. California Fig Syrup Co.,* 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282 (1903):

> [W]hen the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or in his advertisements and business, be himself guilty of any false or misleading representations; that if the plaintiff makes any material false statement in connection with the property which he seeks to protect, he loses the right to claim the assistance of a court of equity; that where any symbol or label claimed as a trademark is so constructed or worded as to make or contain a distinct assertion which is false, no property can be claimed on it, or, in other words,

the right to the exclusive use of it cannot be maintained.

*Id.* at 528, 23 S.Ct. at 164 (use of the mark "Syrup of Figs" not protected because figs were not a main ingredient in the laxative). The type of material misrepresentation considered in *Worden* is far different than Shatel's misuse of a registration symbol. *Worden* held that a court should not protect the exclusive right to use a name or mark which is misleading to the public. *Accord Holzapfel's Compositions Co. v. Rahtjen's American Composition Co.,* 183 U.S. 1, 8, 22 S.Ct. 6, 8, 46 L.Ed. 49 (1901) ("Rahtjen's Patent Composition" not protectable trademark because composition was not patented). The mark SKYE is not misleading, and Shatel is not trying to protect the right to use the registration symbol in connection with the mark. Because misunderstandings about the use of federal registration symbols are common, *see* U.S. Department of Commerce, *Trademark Manual of Examining Procedure* § 902.04 (1979), courts have been reluctant to find unclean hands where the misuse of the registration symbol was negligent or immaterial to the litigation. Gilson, *Trademark Protection & Practice,* § 8:12(13)(iii) (1979). Mao Ta has introduced no evidence to show that Shatel's use of the registration symbol was anything other than inadvertent, and we consider its use immaterial to this litigation. Application of the equitable doctrine of unclean hands lies within the sound discretion of the district court. *Wolf v. Frank,* 477 F.2d 467, 474 (5th Cir.), *cert. denied,* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973). We hold that the district court did not abuse its discretion by refusing to apply the doctrine of unclean hands.

■ Mao Ta's principal argument is that the district court abused its discretion by granting the injunction since Shatel's evidence did not show a substantial likelihood of success on the merits.[2] Mao Ta claims

---

2. In its conclusions of law the district court found that plaintiff had shown "a likelihood of success on the merits." Mao Ta argues that this standard is incorrect—that a *substantial* likelihood is required in this Circuit. But "sub-

stantial" means real, valuable, material, or of substance. Black's Law Dictionary 1280 (rev. 5th ed. 1979). In our opinion the word "substantial" does not add to the quantum of proof required to show a likelihood of success on the

that Shatel could not have prevailed on the merits because there is no evidence that, through use of the mark SKYE, Mao Ta has caused any 51-foot boats to enter into commerce.

 In order to make out a violation of 15 U.S.C.A. § 1125(a) Shatel must show (1) that Mao Ta used a false designation of origin, or a false description or representation in connection with the 51-foot vessel in question and (2) that Mao Ta caused the vessel to "enter into commerce." *Id.; see* note 1 *supra.* Mao Ta argues that it did not cause any improperly designated 51-foot boats to enter commerce because none of its 51-foot boats were sold or transported in this country after the distribution agreement was terminated. Commerce, however, is not limited to the interstate sale or physical transportation of goods. In Section 45 of the Lanham Act, 15 U.S.C.A. § 1127, the word "commerce" is defined for purposes of the Lanham Act as "all commerce which may lawfully be regulated by Congress." It is well settled that as defined "commerce" includes any intrastate transaction which "affects" interstate commerce. *Thompson Tank & Mfg. Co., Inc. v. Thompson,* 693 F.2d 991, 993 (9th Cir.1982). "Commerce" also includes commerce be-

tween citizens of the United States and citizens and subjects of foreign nations. *Bulova Watch Co. v. Steele,* 194 F.2d 567, 570 (5th Cir.), *aff'd,* 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 (1952). Commerce within the power of Congress to control "is not confined to transportation from one State to another, but comprehends all commercial intercourse between different States and all the component parts of that intercourse." *Dahnke-Walker Co. v. Bondurant,* 257 U.S. 282, 290, 42 S.Ct. 106, 108, 66 L.Ed. 239 (1921). Advertising that affects interstate commerce and solicitation of sales across state lines or between citizens of the United States and citizens and subjects of a foreign nation is therefore commerce within the meaning of the Lanham Act.[3] By soliciting orders from Rex Yacht Sales, Inc., Mao Ta caused its boat, designated a SKYE 51, to enter into commerce.[4]

 Mao Ta asserts that even if the Telex to Rex Yacht Sales had caused its boat, designated a SKYE 51, to enter commerce, such conduct would not be actionable. Since it had in fact manufactured the SKYE 51, Mao Ta argues that its representation to Rex Yacht Sales that it manufactured the SKYE 51 was neither a false designation of origin nor a false description

merits. The requirement of a substantial likelihood of success was established in the Fifth Circuit in *Buchanan v. United States Postal Service,* 508 F.2d 259, 266 (5th Cir.1975). *Cf. DiGiorgio v. Causey,* 488 F.2d 527, 529 (5th Cir.1973) (factor to consider is whether plaintiff is likely to prevail); *Blackshear Residents Org. v. Romney,* 472 F.2d 1197, 1198 (5th Cir. 1973) (likelihood of success). Fifth Circuit precedent handed down before September 30, 1981, is binding on this Court. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). *Buchanan* supports its requirement of a substantial likelihood of success by citing Wright and Miller, *Federal Practice and Procedure,* § 2948, which requires plaintiff to show "the probability that plaintiff will succeed on the merits." The word likelihood is synonymous with probability. So the fact that the district court did not use the word "substantial" in describing its conclusion of law, if error, was harmless.

3. As stated in 15 U.S.C.A. § 1127, it is the intent of the Lanham Act, *inter alia,* "to regulate commerce within the control of Congress by making actionable the deceptive and mis-

leading use of marks in such commerce" and "to protect persons engaged in such commerce against unfair competition." The Lanham Act's definition of "commerce" is at least as broad as the definition of commerce employed in any other federal statute. *See Bulova Watch, supra,* 194 F.2d at 570 n. 11.

4. We find no evidence in the record to support a finding that Mao Ta caused its 51-foot boat, designated a SKYE 51, to enter commerce through use of Odyssey's brochure. There was no testimony that Mao Ta used the mark SKYE in soliciting business from Odyssey, or that Odyssey was an agent of Mao Ta, or that Mao Ta was guilty of contributory infringement. To be guilty of contributory infringement the manufacturer must intentionally induce another to infringe a trademark or continue to supply its product to one whom it knows or has reason to know is engaging in trademark infringement. *Inwood Laboratories v. Ives Laboratories,* 456 U.S. 844, 854, 102 S.Ct. 2182, 2188, 72 L.Ed.2d 606 (1982).

or representation. This argument ignores the fact that SKYE 51 boats were manufactured to Shatel's specifications and standards whereas the boats manufactured after the distribution agreement was terminated were not subject to Shatel's quality control. We agree with the district court's conclusion that Mao Ta improperly designated the origin of its vessel, and we agree that Shatel has demonstrated a substantial likelihood of success on the merits of this case.

In granting the preliminary injunction the district court found that the plaintiff would suffer irreparable injury if customers attributed the vessels of the defendant to Shatel because money damages would not eliminate or compensate for customer confusion. The court also found that the hardships created by the preliminary injunction were outweighed by the threatened injury to Shatel and that the public interest would be served by granting the requested injunctive relief. These findings are supported by the record and are not challenged by Mao Ta. We therefore AFFIRM the district court's grant of a preliminary injunction.