Kelvin HODGES and Georgia
Advocacy Office, Inc.

v.

Marjorie P. SMITH, Commissioner,
Department of Medical
Assistance.

Civil No. 1:95–CV–1699–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 16, 1995.

Joan Elaine Risher, Office of Joan Risher, Jonesboro, GA, for Plaintiffs.

Teresa Elizabeth Lazzaroni, Office of State Attorney General, Atlanta, GA, for Defendant.

### ORDER

ORINDA D. EVANS, District Judge.

This civil action is before the court on Plaintiffs' motion for a preliminary injunction. Plaintiffs seek to enjoin the cessation of Medicaid payments to cover the cost of Plaintiff Hodges' liquid diet which is administered through a gastrostomy tube.[1] At hearings on July 21, August 3, and September 8, 1995, the parties presented witness testimony, affidavits and exhibits and also argument of counsel. Additionally, both sides have filed briefs in support of their respective positions.

After considering the evidence and arguments of counsel, the court makes the following findings of fact and conclusions of law. Kelvin Hodges ("Hodges") is a twenty-one year old Medicaid patient who is severely mentally retarded and has both cerebral palsy and a seizure disorder. He resides at home with his father and step-mother. Because he is bedridden and unable to chew or swallow, he receives nutrients solely through a gastrostomy tube. This nutrition currently takes the form of a commercially marketed liquid formula sold under the brand name "Osmolite." Hodges' physician prescribed Osmolite for him in 1993 and the product was supplied by Chapman Healthcare Services ("Chapman"), which in turn was reimbursed by the Defendant. The affidavits of both the doctor and Chapman's pharmacist indicate that Osmolite is a means of nutritional support for Hodges.

Osmolite's manufacturers describe it as a "high-nitrogen, isotonic liquid food providing complete balanced nutrition."[2] Defendant's Exhibit 2. The parties agree that Osmolite is properly classified as an enteral product, i.e., a liquid formula diet which can be introduced by mouth or by tube into the gastrointestinal tract. The parties agree that no prescription is necessary to buy Osmolite.

Prior to his twenty-first birthday, Hodges received Osmolite pursuant to Medicaid's E.P.S.D.T. program. 42 U.S.C. §§ 1396d(a)(4)(B), 1396d(r). This program essentially provides that all medically necessary services must be furnished to Medicaid eligible children under twenty-one. See Pittman v. Secretary, 998 F.2d 887 (11th Cir. 1993), cert. denied, —— U.S. ——, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993). Counsel for the Defendant suggests, though there is no evidence in the record specifically on this point, that the requirement of medical necessity is liberally interpreted as to those under twenty-one.

Hodges turned twenty-one in March, 1995. On May 15, 1995, Chapman received a denial of a reimbursement request from Defendant.[3] Chapman then notified the Hodges

---

1. The court issued a temporary restraining order on July 7, 1995, to maintain the status quo while it considered the merits of Plaintiffs' motion.

2. There are similar food products on the market such as "Ensure" which differ from Osmolite primarily in their osmolarity, or concentration of liquid particles. These other products are also used for tube feedings. Osmolite is not as widely available as some other liquid food substitutes, but can be ordered by the carton from various sources in Georgia. Food stamps can be used to purchase Osmolite.

3. Again, the evidence reflects that enteral products such as Osmolite are reimbursable under the State Medicaid plan only for recipients under twenty-one pursuant to the E.P.S.D.T. program.

that it would not supply Osmolite to them after June 30, 1995. Ricky W. Ussery, a social worker who makes periodic visits to the Hodges' home, wrote to the Department on May 29, 1995 requesting a waiver as to Hodges. The Department replied by letter dated June 22, 1995, that no exception could be made. This litigation then ensued.

There is no dispute as to Hodges' Medicaid eligibility. Therefore, he is entitled to receive those Medicaid benefits which are covered by Georgia's Medicaid Plan either because they are mandated for inclusion by federal statute, or because Georgia has elected to provide a service which is optional under federal law.[4]

The record reflects that the Hodges household receives aggregate government payments of approximately $1,700 per month, of which slightly more than $600 is attributable to Plaintiff Hodges. Hodges receives a portion of these funds pursuant to 42 U.S.C. § 1381 et seq., which Congress passed in order "to provide for the basic needs [of] food, clothing, and shelter of those eligible." *Slavin v. Sec. of Dept. of Health, Ed. and Welfare,* 486 F.Supp. 204, 206 (S.D.N.Y.1980). *See also Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). As such, the funds are intended to be used for Hodges' care and maintenance. The record also reflects that Hodges is eligible to receive food stamps, but has not applied. Neither side has provided the court with evidence concerning the amount of food stamps that could be allotted to Hodges, although the court has requested such information.

The parties agree that Hodges meets the necessary criteria for placement in a nursing home where his room and board (including enteral feedings) would be fully paid for by Medicaid. Apparently, Hodges' family prefers that he remain in their home.

■ Plaintiffs seek a preliminary injunction to enjoin the Department from ceasing

payment for Osmolite, claiming a violation of Title XIX of the Federal Social Security Act of 1935, 42 U.S.C. § 1396; Section 504 of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.; the Americans with Disabilities Act of 1992, 42 U.S.C. § 12101 et seq.; and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. A party seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits of the case; (2) that it will suffer irreparable harm if the injunction is denied; (3) that the injury to it from the denial of injunctive relief outweighs the damage to the opposing party if it is granted; and (4) that the injunction will not harm the public interest. *GSW, Inc. v. Long County, Georgia,* 999 F.2d 1508, 1518 (11th Cir.1993); *Shatel Corp. v. Mao Ta Lumber and Yacht Corp.,* 697 F.2d 1352, 1354–55 (11th Cir.1983).

■ Plaintiffs first argue that Hodges is entitled to reimbursement for Osmolite because he qualifies for the provision of nursing facility services pursuant to 42 U.S.C. § 1396a(a)(10)[5], and by law those who are eligible for nursing facility services must be provided home health services. 42 U.S.C. § 1396a(a)(10)(D). Plaintiffs assert that because Medicaid provides room and board to those in a nursing facility, including, where appropriate, a liquid diet such as Osmolite, Hodges should be provided with Osmolite as a component of home health services as well. However, there is simply no statutory or other support for Plaintiffs' implicit argument that where eligibility for nursing facility services yields eligibility for home health services, the services necessarily must be the same. Accordingly, Plaintiffs' first argument is rejected.

■ Plaintiffs' next argument is that Osmolite is a drug which is reimbursable under Medicaid's drug rebate program. *See* 42 U.S.C. § 1396a(a)(12). The evidence indi-

---

Once Hodges turned twenty-one, he no longer qualified for reimbursement via this program.

4. In the case of an optional service which is included in the State plan, the State pays approximately 37% of the cost; the federal government pays the rest.

5. Hodges' receives Medicaid under 42 U.S.C. § 1396a(a)(10)(A)(i)(II), and as such, qualifies for this assistance. *See also* 42 U.S.C. § 1396d(a)(4)(A).

cates that while state participation in the drug rebate program is optional, Georgia has elected to participate. However, Plaintiffs have produced no evidence that Osmolite is a "drug" under Georgia's Medicaid plan. Indeed, the record reflects that on August 2, 1991, the Director of the Department of Health and Human Services' Medicaid Bureau determined in a memorandum sent to the Associate Regional Administrator of the Division of Medicaid in Atlanta that enteral products do not qualify for reimbursement under Medicaid's drug rebate program. Moreover, the evidence before the court does not suggest that Osmolite is a drug. While the court notes Hodges' physician's affidavit in which he states that Hodges will die of malnutrition absent the provision of Osmolite, the court does not find that this suggests the classification of Osmolite as a drug rather than as a food. Accordingly, this argument is also rejected.

■ Plaintiffs also maintain that the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Americans With Disabilities Act, 42 U.S.C. § 12101, proscribe Defendant's refusal to pay for Osmolite. As to the Rehabilitation Act, Plaintiffs' argument is that the age discriminatory feature in Georgia's Medicaid plan violates the Act. However, the statute cited by Plaintiff has nothing to do with age discrimination. Plaintiffs' argument under the Americans With Disabilities Act is that the provision of enteral products to those in nursing homes but not to those receiving home health services has a tendency to "isolate and segregate individuals with disabilities" in contravention of § 12101's intent to end such segregation in American society. Hodges argues that he will be forced to live in a nursing home (a more segregated facility) in order to continue to receive Osmolite. However, the section cited by Hodges does not itself provide a cause of action to him; moreover, the record fails to convince the court that he would necessarily have to enter a nursing home if Osmolite is not reimbursable as part of home health services.

■ Plaintiffs next argue that the Due Process Clause of the United States Constitution "protects an interest in life as well as an interest in refusing life-sustaining medical treatment," citing *Cruzan v. Director, Missouri Department of Health,* 497 U.S. 261, 281, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990). Assuming without deciding that the principles of the *Cruzan* case would have some implication for a Medicaid patient, the court finds that Plaintiffs have failed to provide convincing evidence that Defendant's failure to reimburse Hodges for Osmolite would result in his death. Hodges does appear to have adequate funds to purchase the Osmolite he requires; alternatively, he may live in a nursing home where Osmolite would be provided free of charge.

■ Plaintiffs also assert, without amplification, that the provision of enteral products to those under 21, but not to those 21 and older is so arbitrary as to violate the Fourteenth Amendment of the United States Constitution. Inasmuch as the arbitrariness of this feature is not self-evident, this claim must fail.

■ Finally, Plaintiffs argue that Hodges is entitled to Medicaid-reimbursed Osmolite as a mandatory "medical supply" provided pursuant to home health services. Federal regulation defines home health services to include "[m]edical supplies, equipment, and appliances suitable in the home." 42 C.F.R. 440.70(b)(3). The parties agree that there is no federal regulation which defines the meaning of "medical supplies," but Plaintiffs argue that Osmolite is a "medical supply" in Hodges' case. This argument receives some support from the Medicaid Bureau Director's memorandum of August 2, 1991 (Plaintiffs' Exhibit 1), which notes that home health services may include enteral products "when the nutrients constitute a medical supply." The evidence before the court, therefore, tends to suggest that in an individual case an enteral product could, within the discretion of the Defendant, constitute a medical supply. Because inclusion of home health services in the state medical plan is mandated by federal law under 42 U.S.C. § 1396a(a)(10)(D), the state may not simply rest on its assertion that Georgia's plan does not contemplate the provision of enteral products for those twenty-one and over.

In light of this fact, it is important to note that the issue of whether Defendant was required to notify the Hodges family prior to ceasing to pay for his Osmolite has not been adequately addressed by either side. The court realizes that the payments Hodges received prior to his twenty-first birthday were made under a different program from the home health services program; however, both are administered by the Defendant. Defendant states that

"... it would have been more prudent for the Department to give Plaintiff Hodges notice that his E.P.S.D.T. benefits would end when he reached 21, Plaintiff would not be entitled to an administrative appeal of this decision ... [because] the Department is not required to provide a hearing to recipients if the sole issue is a Federal or State law requiring an automatic change adversely affecting some or all recipients. 42 C.F.R. § 431.220. The Department has interpreted this provision to not require a hearing concerning Mr. Hodges' case, since once Mr. Hodges attained the age of 21, under Federal Law he automatically was no longer eligible for E.P.S.D.T. services. Additionally, since there is no coverage for enteral nutrients in Georgia, the sole purpose of an administrative hearing in this circumstance would be to determine whether or not Mr. Hodges' [sic] was indeed 21."

Defendant's Brief filed August 3, 1995, pp. 12–13.

■ Plaintiffs, on the other hand, argue that the Defendant's failure to notify Hodges before terminating his benefits violates 42 C.F.R. § 431.200, et seq., O.C.G.A. § 49–4–153, and the Department of Human Resources ABD Medicaid Manual § 2270. The court finds Plaintiffs' argument compelling. The state is required under 42 C.F.R. § 431.211 to provide a Medicaid recipient with ten days advance notice prior to taking any action that qualifies under 42 C.F.R. § 431.201 as a "termination, suspension, or reduction of Medicaid eligibility or covered services." See also 42 C.F.R. § 431.210 (listing the required contents of notices). The parties agree that no notice was given prior to terminating Hodges' provision of Osmolite, and as such, it appears that Defendant violated this regulation.

Defendant's reliance on 42 C.F.R. § 431.220(b), moreover, is misplaced. That regulation relieves the state from granting a hearing in cases involving a federal or state law "requiring an automatic change adversely affecting some or all recipients." Id. It does not mention, however, and therefore does not affect the state's obligation to provide notice to Medicaid recipients prior to a termination in coverage.

Based on the evidence before it, therefore, the court finds that Hodges is entitled to an administrative determination as to whether Osmolite constitutes a reimbursable medical supply as part of home health services. The Defendant is DIRECTED to cause an administrative hearing to be conducted within thirty (30) days of date of entry of this order to address this issue with evidence and arguments. The parties are DIRECTED to report to the court, in writing, within sixty days of date of entry of this order, as to the disposition of the hearing. The Clerk is DIRECTED to submit the file to the court when said report is filed.

In summary, Plaintiffs' arguments are rejected with the exception of the argument that Hodges is entitled to the provision of Osmolite as a component of home health services. Because the evidence presently before the court indicates that Osmolite in fact may qualify as a medical supply in Hodges' case, and because Defendant failed to notify Hodges of its intention to cease paying for Osmolite as required, the Defendant is ENJOINED, pending further order of the court, from ceasing to pay for Hodges' Osmolite.

SO ORDERED.