The **ATLANTA JOURNAL AND CONSTITUTION,** Plaintiff,

The **New York Times Company,** Intervenor–Plaintiff,

v.

The **CITY OF ATLANTA DEPARTMENT OF AVIATION,** et al., Defendants.

**USA TODAY,** a division of Gannett Satellite Information Network ("Gansat"), Inc., Plaintiff,

The **New York Times Company,** Intervenor–Plaintiff,

v.

The **CITY OF ATLANTA DEPARTMENT OF AVIATION,** et al., Defendants.

Civil Action Nos. 1:96–CV–1783–RWS, 1:96–CV–1847–RWS.

United States District Court, N.D. Georgia, Atlanta Division.

June 3, 1998.

Peter Crane Canfield, Sean R. Smith, Thomas MacIver Clyde, Dow, Lohnes & Albertson, Atlanta, GA, for Atlanta Journal and Constitution, New York Times Co.

James Clifton Rawls, Powell, Goldstein, Frazer & Murphy, Atlanta, GA for USA Today.

William Henry Boice, Michael W. Tyler, R. Scott Tewes, Kilpatrick Stockton, Michael Lloyd Smith, Evelyn Yvette Teague, Clifford E. Hardwick IV, Office of Atlanta City Attorney Law Dept., Ashley B. Watson, Seyfarth, Shaw, Fairweather & Geraldson, Atlanta, GA, for City of Atlanta Dept. of Aviation.

## MEMORANDUM OPINION AND ORDER

STORY, District Judge.

In Civil Action No. 1:96–CV–1738, Plaintiff Atlanta Journal and Constitution (hereinafter referred to as "AJC") filed a Complaint for Declaratory and Injunctive Relief. The AJC alleged Defendant City of Atlanta Department of Aviation implemented and enforced a scheme restricting newspaper vending racks at Hartsfield Atlanta International Airport which violated the First Amendment of the United States Constitution and Article I § 1, ¶ 5 of the State of Georgia Constitution. The AJC seeks a declaration that Defendants' plan is unconstitutional and an injunction prohibiting Defendant from implementing and enforcing its newsrack plan and requiring Defendants to replace Plaintiff's newsracks. The AJC also requests damages for violations of 42 U.S.C. § 1983 and attorney's fees. In Civil Action No. 1:96–CV–1847, Plaintiff USA Today alleged the same constitutional violations and seeks similar injunctive relief, damages and costs.

The two cases were consolidated by order entered November 18, 1996. Case No. 1:96–CV–1738 is presently before the Court on Defendants' Motion to Dissolve Preliminary Injunction [47–1], Plaintiff USA Today's Motion for Attorneys' Fees [55–1], Plaintiff USA Today's Motion for Protective Order [67–1], and Plaintiff USA Today's Motion to Compel [68–1]. In Case No. 1:96–CV–1847 the corresponding motions are pending: Defendants' Motion to Dissolve Preliminary Injunction [28–1], Plaintiff USA Today's Motion for Attorneys' Fees [34–1], Plaintiff USA Today's Motion for Protective Order [43–1], and Plaintiff USA Today's Motion to Compel [44–1]. Also pending in Case No. 1:96–CV–1847 is Defendants' Motion to Compel [22–1].

## I. FACTUAL BACKGROUND

Prior to the events giving rise to the present litigation, the City of Atlanta Department of Aviation (hereinafter referred to as the "Department") agreed to allow newsstand operators to enter concession contracts with the Department.[1] The concession contracts did not include the right to subcontract for the placement of newsracks in the Airport. Therefore, the Department allowed newspaper publishers to place their own newsracks in the Airport terminals for the purpose of direct sales to consumers. At the same time, all Airport newsstands in the concourses were required by concession agreements to carry *The Atlanta Journal and Constitution, USA Today,* and *The New York Times.* Under the concession agreements, the City received at least 11% of the gross revenue generated from the sale of each newspaper sold through newsstands.

In April 1996, AJC received a letter from Steve Baker, Deputy General Manager of the Atlanta Department of Aviation, stating that for "appearance and efficiency" the Department was developing a plan to have city-owned newsracks replace privately owned newsracks located at the entrance vestibules of the main airport terminal.[2] Both papers

---

1. Before the Department used concession contracts, the Airport News Corporation had exclusive rights to sell newspapers in the terminal building areas of the Airport by a "Lease and Concession Agreement" originally executed with the City in June of 1966. Under the Lease and Concession Agreement, Airport News subcontracted the right to sell newspapers through vending machines to publishers such as Cox Enterprises. Plaintiff AJC is a division of Cox Enterprises. After the subcontract agreement between Cox and Airport News was terminated, Cox installed newsracks at the Airport without permission from Airport News. In a compromise agreement, Airport News allowed Cox to place 18 newsracks in the Airport at specified locations in exchange for a 30% commission on the single-copy price of its daily and Sunday publications sold through newsracks. AJC later began paying a portion of its Airport newsrack revenues to Airport News or its successor, which in turn paid a portion of those revenues to the Department. USA Today paid a commission on its newsrack sales under a similar arrangement.

2. As a result of renovations at the Airport, the Department along with its consultants developed a "Design Criteria" for redesigned airport space. One of the purposes of the Design Criteria was to

for sale and papers for free distribution would use city-owned newsracks. Approximately two months later, Baker wrote to AJC stating that the Airport had purchased newspaper vending boxes to be placed in designated locations. Baker informed AJC that the Department was prepared to lease the vending boxes to publishers for a fee of $20 per month.[3] The Department's vending boxes or newsracks were provided in part by the Coca–Cola Company as a part of an agreement between the two entities. With this agreement, the Department allowed Coca–Cola to place large advertisements on the tops and sides of newsracks during the 1996 Summer Olympic Games.

Under the new policy, publishers would operate under a permit with the Department rather than under the old concessionaire contracts. Baker also informed AJC that if it chose not to proceed under the new program, it had to remove all of its newsracks from the Airport by July 1, 1996. Because the Department's newsracks were covered with advertisements for Coca–Cola, AJC constructed its own newsracks to conform to color and size requirements of the new policy. On July 1, 1996, Baker granted AJC permission to place a limited number of AJC newsracks in the Airport. On or about July 6, 1996, the Department removed AJC's newsracks because they were not of the stacked or double variety but were single side-by-side newsracks. AJC alleged as a result of the Department's conduct it has lost sales. Plaintiff USA Today made similar allegations in its Complaint.

On July 10, 1996, the Court entered an order enjoining enforcement of the new newsrack policy for ninety days and reinstating the policy that was in effect prior to July 1, 1996. The Court based its decision on First Amendment grounds, stating that restrictions presented by the Department's newsrack plan did not appear at that time to be reasonable. The Court found there were no legitimate aesthetic or safety concerns for requiring the new policy as opposed to the old policy, irreparable harm would result from further restrictions on newspaper distribution, a stay of the Department's new plan would not unduly harm the Department, and there was arguably a public interest in having access to newspapers free from unreasonable restrictions. During the effective period of the injunction, the Court clarified, supplemented, and extended the preliminary injunction.[4] Prior to the Court's July 10, 1996 order, no newsracks had ever been placed on individual concourses. On or about July 19, 1996, AJC received permission from Delta Airlines to maintain newsracks on its concourses.

In July of 1997, the Department developed a proposed newsrack plan. The proposed plan requires issuance of a permit for the placement and use of coin-operated newspaper vending machines at the Airport in designated sites. The designated sites are outside the terminals near the terminal gates. City-owned newsracks will be provided under the proposed plan at the sole cost and expense of the Department, while vendor-owned newsracks may be used at the sole cost and expense of the vendor. A fee of $32.40 per month will be charged for the use of a city-owned newsrack and a fee $27.32 per month will be charged for the placement of a vendor-owned newsrack.[5] Under the "Policies and Procedures," newsracks must be white and may not display advertising other than

control the appearance of consumer service concessions and reduce visual clutter while creating a unifying standard for tenant design and construction. The renovations resulted in an increase in the number of newsstands located throughout the concourses and central terminal.

3. A "News Box Term Sheet" from the Department indicated that city-owned newsracks would be located at the west curb, upper and lower north terminal curbs and the upper and lower south terminal curbs. See Plaintiff AJC's Complaint, Exhibit F.

4. By order entered July 12, 1996, the Department was required to reinstitute the newsrack policy in place prior to April 1, 1996. By order entered July 25, 1996, the Department was prohibited from taking any action to restrain, impede, or interfere with the plaintiffs' distribution and delivery of newspapers at the Airport. By order entered July 26, 1996, the Department was prohibited from removing any newsracks presently on the concourses or adding any newsracks to the concourse portions of the Airport until further order of court.

5. Cleaning of newsracks and surrounding areas will cost $7.32 per newsrack site per month.

the name of the publication and the publication's logo. All terms and conditions of the Policies and Procedures are intended to be enforced and administered on a viewpoint-neutral basis.[6]

## II. LEGAL ANALYSIS

### A. Defendants' Motion to Dissolve Preliminary Injunction

 A district court has continuing jurisdiction over a preliminary injunction and may relieve a party from obligations determined by the decree if it is no longer equitable. Fed.R.Civ.P. 60(b)(5); *Canal Authority of Fla. v. Callaway,* 489 F.2d 567, 578 (5th Cir.1974); *Elgin Nat'l Watch Co. v. Barrett,* 213 F.2d 776 (5th Cir.1954). On a motion to dissolve preliminary injunction, the movant has the burden of proof. *United States v. Harrison County, Miss.,* 463 F.2d 1328, 1329, (5th Cir.1972). AJC argues that under *United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 76 L.Ed. 999 (1932) and *Cable Holdings of Battlefield, Inc. v. Cooke,* 764 F.2d 1466, 1474 (11th Cir.1985), the Court should require the Department to demonstrate the existence of a "grievous wrong evoked by new or unforseen conditions" necessary for dissolution of a preliminary injunction. However, "A court of equity cannot rely on a simple formula [in determining whether to dissolve a preliminary injunction; a court of equity must] evaluate a number of potentially competing considerations to determine whether to modify or vacate an injunction entered by consent or otherwise." *Building and Constr. Trades Council of Philadelphia and Vicinity v. National Labor Relations Bd.,* 64 F.3d 880, 888 (3rd Cir. 1995). On Defendants' motion, the Court should consider the circumstances leading to entry of the preliminary injunction, including the likelihood Plaintiffs will prevail on the merits of their claims. *Id.; Shatel Corp. v. Mao Ta Lumber and Yacht Corp.,* 697 F.2d

1352 (11th Cir.1983). The Court should also consider whether Defendants have complied with or attempted to comply with the terms of the injunction, including the likelihood that the conduct sought to be prevented will recur and result in harm to the plaintiffs. *Id.* To do equity between the parties, the Court must decide whether the threatened injury to Plaintiffs outweighs damage that may be caused to Defendants. *Id.* Furthermore, the Court should determine whether the objectives of the preliminary injunction have been achieved and whether dissolution would be adverse to the public interest. *Id.*

Because Plaintiffs' did not amend their complaints to challenge the constitutionality of the proposed plan and Defendants did not assert a counterclaim for declaratory judgment on the constitutionality of the proposed plan, USA Today urges the Court not to consider the proposed plan in deciding Defendants' motion for dissolution. USA Today contends the constitutionality of the proposed plan is not ripe for review, and even if the proposed plan were ripe, it is also unconstitutional.

 In determining whether a claim is ripe for review, the Court should consider the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration. *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir.1995). Although the possible hardship to the Department due to the lack of certainty in the administration of its duties and the loss of revenue may favor resolving the dispute over the Department's proposed plan,[7] the propriety of the proposed plan is not fit for judicial review because the proposed plan may require additional discovery. Consequently, the constitutionality of the proposed plan is not ripe for review. Therefore, the Court will not consider the details of the proposed plan in deter-

---

**6.** Vacant newsrack sites are to be filled by the issuance of a permit to an applicant who completes an application in accordance with the requirements set out in the Policies and Procedures. A vendor/applicant must disclose its name; address; the name, address, and telephone number of a designated representative; the name of the publication, publisher and frequency of publication; the site requested; whether the vendor will use its own newsracks

or city-owned newsracks; and an agreement to adhere to the Polices and Procedures. Occupied newsrack sites will be filled by application and random drawing. All vendors are required to maintain a comprehensive general liability insurance policy on their newsracks.

**7.** Hereinafter, the Court will refer to the April 1996 plan as the "Coca–Cola plan" and the July 1997 plan as the "proposed plan."

mining whether to dissolve the preliminary injunction.

▮ Plaintiffs contend several aspects of the Coca–Cola plan led them to seek and obtain a preliminary injunction against Defendants. Plaintiffs argue the Department attempted to place artificial restrictions on the number and location of newsracks, to require that publishers sell their product in newsracks covered with advertising, and to charge an arbitrary and exorbitant fee for the placement of newsracks. Plaintiffs are correct in their assertion that the right to distribute newspapers through newsracks is protected by the First Amendment. *Gold Coast Publications Inc. v. Corrigan*, 42 F.3d 1336, 1343 (11th Cir.1994). However, the government may impose content neutral restrictions on free speech. *See Daniel v. City of Tampa. Fla.*, 38 F.3d 546 (11th Cir.1994). The extent to which government restrictions are justified depends on the nature of the forum. In the case at bar, the Hartsfield Atlanta Airport is a nonpublic forum. *See International Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 112 S.Ct. 2701, 2702, 120 L.Ed.2d 541 (1992).[8] In a nonpublic forum, restrictions on free speech are permissible as long as they are viewpoint-neutral and reasonable. *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983), *Sentinel Communications, Co. v. Watts*, 936 F.2d 1189, 1202 (11th Cir.1991), *United States v. Belsky*, 799 F.2d 1485 (11th Cir.1986). The reasonableness of restrictions on access to a nonpublic forum must be assessed in light of the purpose of the forum and all surrounding circumstances. *Ethredge v. Hail*, 56 F.3d 1324 (11th Cir.1995). "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. The primary purpose of any airport and the airport in the case at bar

is to facilitate the migration of passengers by providing transportation services in an efficient manner. The Department also seeks to keep the Airport free of obstructions to pedestrian traffic and to maintain pedestrian safety and convenience. One additional goal of Airport management is to achieve self-sustaining operations by generating revenue from concessions and parking.

Plaintiffs contend the restrictions on the number and location of newsracks at the Airport are unreasonable. Plaintiffs contest the decrease in the total number of newsracks.[9] However, the Department contends it has a legitimate interest in preserving the aesthetic appearance of the Airport and the installation of newsracks throughout the Airport will cause visual clutter. The Department also asserts that the proliferation of newsracks in the Airport will result in an increased security risk and frustrate pedestrian traffic flow.

"It is well settled that a state may legitimately exercise its police powers to advance esthetic values." *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984). Because the Department may have a legitimate interest in preserving the aesthetic quality of the Airport, restrictions on the appearance and location of newsracks are not unreasonable means of furthering the Department's asserted interest. As compared to the concourses, the placement of newsracks away from pedestrian traffic areas within the large open spaces of the terminal may further the Department's interest in reducing visual clutter.

The Department also insists that the reduction in the number and location of newsracks is necessary to facilitate convenient, efficient pedestrian traffic flow. This contention is consistent with the Department's limiting the placement of newsracks to the ter-

---

**8.** Airport terminals are not traditional public fora because they have not historically been made available for expressive activity or designated as such. *Perry Educ. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S.Ct. 948, 954, 74 L.Ed.2d 794 (1983).

**9.** AJC contends it currently maintains approximately 122 newsracks at the Airport including

the concourses. AJC did not specify the number of newsracks in the concourses at the time the preliminary injunction was imposed. However, it is clear newsracks were not permitted in individual concourses under the old plan, and in continuation of that policy newsracks were not permitted in the concourses under the Coca–Cola plan.

minal areas. Because terminal areas are high traffic areas, the proliferation of newsracks in these areas would severely impair the Department's interest in promoting safe convenient pedestrian traffic flow. Although the Department is not required to show that alternative channels of communication exist, newsstands throughout the concourse areas are evidence of the reasonableness of the limitation on the number of newsracks in the Airport. *Cf. Jacobsen v. City of Rapid City, S.D.*, 128 F.3d 660, 664 (8th Cir.1997) (government's total ban on newsracks in terminal was not reasonable in light of purpose of forum and corresponding government interests) and *Multimedia Publ'g Co. of S.C., Inc. v. Greenville–Spartanburg Airport Dist.*, 991 F.2d 154 (4th Cir.1993) (airport's interest in aesthetics, preserving revenue, patron safety and convenience and overall security were insufficient to justify total ban on newsracks in the terminal).

Plaintiffs-also challenge the requirement that they sell newspapers in newsracks covered with advertisements for another entity. It is undisputed that commercial speech may receive First Amendment protection. Furthermore, the right to free speech includes the right to refrain from speaking. *Wooley v. Maynard*, 430 U.S. 705, 713, 97 S.Ct. 1428, 1434, 51 L.Ed.2d 752 (1977). Therefore, Plaintiffs' claims that requiring publishers to use newsracks with advertisements of another entity violates their rights under the First Amendment remain viable.

AJC contends the $20 fee imposed under the Coca–Cola plan was not related to the Department's administrative costs and is, therefore, unconstitutional. The Department contends one of the purposes of the Coca–Cola plan was to re-establish revenue from newsracks and the fee under the Coca–Cola plan was reasonable in light of the commissions previously paid on newspaper sales. The Department's evidence demonstrates that the proposed fee is not facially unreasonable. In the past, AJC paid newsstand concessionaires 30% of gross revenues from newsrack sales, and USA Today had a similar agreement with newsstand operators. Therefore, the Department has demonstrated that the fee is at least facially reasonable.

 Defendants' contend the requirements for dissolution of the preliminary in-

junction have been met. In the Court's view, there remains a substantial likelihood Plaintiffs will succeed on the merits of their claims with regard to the Coca–Cola plan. According to *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976), a loss of First Amendment freedoms for even a minimal period of time constitutes irreparable injury. However, with regard to passenger safety and convenience, there is little evidence to show that the Coca–Cola plan would increase passenger safety and convenience or enhance aesthetics as compared to the plan that was in effect prior to April of 1996. With the Department's strongest interest being generating revenue, the loss of revenue to the Department compared to the threat of violations of Plaintiffs' constitutional rights demonstrate that the balance of harms does not favor dissolution of the preliminary injunction. Although the objectives of the preliminary injunction may have been achieved, Defendants' conduct subsequent to entry of the Court's original order suggests that dissolution would be adverse to the public's interest in the preservation of free speech. Therefore, Defendants' motion for dissolution of the preliminary injunction must be denied.

## B. USA Today's Motion for Attorneys Fees

Pursuant to 42 U.S.C. § 1988(b), in a civil rights action the court has the discretion to award a prevailing party reasonable attorneys' fees. USA Today contends because the Court granted its request for preliminary injunctive relief and the Department has since abandoned the Coca–Cola plan, it is a prevailing party and is entitled to an award of attorneys' fees.

 Under 42 U.S.C. § 1988, a prevailing-party plaintiff must obtain actual relief on the merits which materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 111–112, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992). Plaintiff USA Today is a prevailing party. USA Today's motion is not premature. An award of attorneys' fees under 42 U.S.C. § 1988 does not require a favorable judgment following a full trial on the merits. *Hanrahan v. Hampton,*

446 U.S. 754, 757, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980). Grant of a preliminary injunction on the merits may entitle one to prevailing party status. *Taylor v. City of Fort Lauderdale,* 810 F.2d 1551, 1558 (1987). Defendant contends the primary issues in this case are whether the Department may charge a revenue-generating fee for the placement of newsracks at the Airport and whether the Department may control the number and location of newsracks at the Airport, neither of which was decided as a result of the grant of Plaintiffs' motion for preliminary injunction. The Court acknowledges that the decision on the motion for preliminary injunction was not a judgment on the ultimate issues in the case. However, at this stage of the proceedings, the Court need only decide whether USA Today has succeeded on "any significant issue in the litigation which achieved some of the benefit sought in bringing the suit." *Texas State Teachers Ass'n v. Garland Indep. School Dist.,* 489 U.S. 782, 791–792, 109 S.Ct. 1486, 1493, 103 L.E.2d 866 (1989). Formal judicial relief is not required. *See e.g., Royal Crown Cola Co. v. Coca–Cola Co.,* 887 F.2d 1480 (11th Cir.1989); *Hewitt v. Helms,* 482 U.S. 755, 755, 107 S.Ct. 2672, 2673, 96 L.Ed.2d 654 (1987) (prevailing party status requires grant of some relief on the merits with or without benefit of a formal judgment). The Department has abandoned the Coca–Cola plan. The abandonment of the Coca–Cola plan significantly changed the legal relationship between the parties by modifying the Department's behavior in a way that directly benefitted the plaintiffs. The Department no longer seeks to require publishers to place their newspapers in newsracks with advertising for another entity. *See e.g., Church of Scientology Flag Service, Org., Inc., v. City of Clearwater,* 2 F.3d 1509, 1514 (11th Cir.1993) (plaintiff did not fail to qualify as prevailing party where defendant ceased some of its challenged conduct while persisting in other challenged conduct); *cf. Markham v. Int'l Ass'n of Bridge, et al.,* 901 F.2d 1022 (11th Cir.1990) (where preliminary injunction merely preserved status quo, plaintiff was not a prevailing party). Also, the Department no longer seeks to replace privately owned newsracks with city-owned newsracks. Therefore, USA Today is a prevailing party and is entitled to an award of attorneys' fees in connection with obtaining preliminary injunctive relief. After proper notice and a hearing, the Court will make such an award.

**C. USA Today's Motion to Compel Production**

Pursuant to Federal Rule of Civil Procedure 37, USA Today requests that this Court compel the production of documents identified by the Department's response to USA Today's interrogatories. USA Today's Interrogatory No. 1 states,

> Were any tests, inspections or research studies made or taken in the last ten (10) years with respect to the airport newsrack policy and the services and products preferred by users of the Airport, including but not limited to research concerning users' opinions regarding access to newsstands or newsracks, the sale of newspapers and other reading material?

The Department responded without objection. The Department's response states, "[T]he manner and location of providing reading materials to the public was reviewed as part of the overall concessions plan development in 1994. A passenger survey study was done within the last six months which [asks] general questions regarding airport concessions." In the event that the Department provided a positive response to Interrogatory No. 1, USA Today's Interrogatory No. 2 requests that the Department provide identifying information for the studies described in response to Interrogatory No. 1. Again, without objection, the Department responded, in part, "The concessions plan was developed by the Department of Aviation with the assistance of Ernst & Young ... The passenger terminal survey was conducted by Air Marketing Services, Inc./Airport Interviewing and Research, Mr. Ira Weinstein, President ..."

In response to USA Today's Request to Produce No. 15, the Department, without objection, agreed to produce all documents dated January 1, 1993 through July 1, 1996 which were responsive to USA Today's Interrogatories Nos. 1 and 2. USA Today's Request to Produce No. 16, seeks all studies or reports prepared between January 1, 1993 and July 1, 1996 which contain measurements, evaluations, or references to passenger/airport-user demand for published infor-

mation (including but not limited to reading material such as newspapers). In response to Request No. 16, the Department stated that there were no documents responsive to USA Today's request; however, the Department reserved the right to supplement their response. On October 2, 1997, Steven Baker was deposed. Baker identified one research study on passenger flow which was conducted by the "HJ Mobility Company."

On October 3, 1997, USA Today sent a letter to the Department's counsel requesting the production of documents identified by USA Today's Request to Produce Nos. 15 and 16. On the last day of discovery, October 10, 1997, the Department informed USA Today's counsel by telephone and later by telecopier that the documents requested were unresponsive. USA Today filed its motion to compel on the same day.

 In response to USA Today's motion, the Department admitted that the study identified by Baker addresses passenger flow. However, the Department argues this topic was not covered by USA Today's interrogatory request. The failure of the Department to object to USA Today's discovery requests results in waiver. The Department waived any objection to the disclosure of the concession plan and its accompanying research studies. Steven Baker's testimony indicates that the study on passenger flow is at least related to if not an integral part of the concession plan identified in Defendant's response to USA Today's Interrogatory No. 1. Therefore, the Department must produce the study on passenger flow conducted by JKH Mobility Services. The Department argues the Air Marketing Services Study is also unresponsive to USA Today's request. The Department contends the results of the Air Marketing Study provide background information on travelers and their use of the airport and concessions, not newsracks or newspapers. However, USA Today's Interrogatory No. 1 specifically states that it is not limited studies which address newsracks and newspapers but includes studies which address services and products preferred by

Airport users. In addition to the Department's contention that the Air Marketing Services Study is unresponsive as to subject matter, the Department also contends the study is unresponsive as to the relevant time period USA Today's request. The Department asserts that the Air Marketing Study was prepared and dated after July 1, 1996 and is beyond the scope of USA Today's request. In its reply brief, USA Today asserts that its Request to Produce No. 24 seeks all documents contained in Defendants' Response to Plaintiff's First Set of Interrogatories. Because Defendants' identified the Air Marketing Study without objection, the study must be produced regardless of when it was prepared and dated.

The Court reserves ruling on the issue of attorneys' fees pending a determination of whether the documents once produced are indeed responsive to USA Today's requests.

### D. Defendants' Motion to Compel

On May 22, 1997, Defendants filed a motion to compel in Case No. 1:96–CV–1847.[10] This motion is not contained in the record of Case No. 1:96–CV–1738. Under Local Rule 5.2, Defendants were required to file with the clerk two additional copies of its Motion to Compel, one copy to be filed in the consolidated case and treated as an original. However, the record of Case No. 1:96–CV–1738 does not include Defendants' Motion to Compel. In the interests of justice and judicial economy, this Court will consider Defendants' Motion to Compel filed in Case No 1:96–CV–1847 as also filed in Case No. 1:96–CV–1738. Therefore, the Court will also consider Defendants' Motion to Compel for the purpose of deciding Plaintiff USA Today's corresponding Motion for Protective Order.

On January 29, 1997, Defendants served their second request for production. USA Today filed a response on March 14, 1997. Defendants' motion relates to requests Nos. 1, 3, 9, 10, 13–15. Defendants seek an order compelling Plaintiff USA Today to produce documents responsive to Defendants' Second Request for Production. Defendants con-

---

**10.** Defendants' Motion to Compel is identified on the docket of Case No. 1:96–CV–1847 as item No. 22. On June 30, 1997, the Court granted Defendants' motion. See Case No. 1:96–CV–1847, Item No. 25. However, this Order was later vacated by order entered July 28, 1997. See Case No. 1:96–CV–1847, Item No. 32. Therefore, Defendants' Motion to Compel is presently pending before this Court.

tend the documents sought are relevant to the potential adverse effects of newsracks on the Department's interest in raising revenue and preserving aesthetics, safety and convenience. USA Today contends the Department seeks irrelevant documents to support its post hoc rationalizations for the decision to adopt the Coca–Cola Plan.

In Request No. 1, Defendants seek reports on USA Today's Atlanta Airport newspaper sales since January 1, 1985. USA Today objected on the grounds of relevancy and confidentiality.[11] Defendants' Request No. 3 seeks documents which reflect the terms or conditions by which USA Today sells its newspapers through retail establishments at the Atlanta Airport. USA Today raised the same objections found in its response to Request No. 1.

■ The documents sought in both requests are undoubtedly relevant to evaluate the reasonableness of the proposed fee for the use and/or placement of newsracks at the Airport. The Department's reasons for the change in newsrack policy are not post hoc rationalizations but merely a more detailed explanation of the interests it seeks to further by implementation of a new policy.[12] USA Today failed to demonstrate that the documents sought contain confidential information that should not be disclosed. Therefore, USA Today must produce the documents requested in Defendants' Request Nos. 1 and 3.

■ Request No. 9 seeks all documents reflecting the effect of newsrack sales on non-newsrack sales in other airports. Request No. 10 seeks all documents that refer to the relationship between newspaper sales by newsstands and impulse or incidental sales of other goods at newsstands. USA Today contends both requests are overbroad and unduly burdensome. USA Today also contends the documents sought are irrelevant. The Court agrees that Defendants' requests are overbroad and unduly burdensome. Furthermore, the Department failed

to demonstrate how sales at other airports are relevant to the case at bar. However, Defendants' requests are relevant to the extent they seek information on the effect of newsrack sales on non-newsracks sales and the relationship between sales in newsstands and impulse sales of other goods. *See e.g., Gannett Satellite Info. Network, Inc. v. Berger,* 716 F.Supp. 140, 152 (D.N.J.1989), *aff'd in part, rev'd in part,* 894 F.2d 61 (3rd Cir.1990). USA Today is directed to respond to Defendants' Request Nos. 9 and 10 as it relates to sales at the Atlanta Airport and for the period of January 1, 1995 to present.

Request No. 13 seeks all documents reflecting complaints received by USA Today since January 1, 1990 regarding the operation of its newsracks. This request includes civil actions filed against USA Today. In response, USA Today objected to this request as overbroad and unduly burdensome as to airports other than Hartsfield. The Department failed to demonstrate the relevancy of complaints regarding incidents at other airports. Therefore, Defendants' motion as to Request No. 13 is denied.

Request No. 14 seeks all documents relating to any occurrence of vandalism, mechanical breakdown or malfunction of newsracks at any major United States airport since January 1, 1990. USA Today raised the same objections as above and objected on the grounds of relevancy. The Department failed to demonstrate the relevancy of incidents of vandalism, mechanical breakdown or malfunction at other airports. Therefore, Defendants' motion as to Request No. 14 is denied.

Request No. 15 seeks all documents which refer to the placement or the threatened placement of an explosive or incendiary device in a newsrack. USA Today objected on the grounds of overbreath and relevancy while stating that, as to the Atlanta Airport, no such documents existed. Defendants' request is indeed overbroad. USA Today has responded to this Request to the extent that

---

**11.** USA Today failed to object to this request as overbroad. The Court agrees with Defendants' that the history of newsrack sales is relevant to the subject matter of the pending action.

**12.** The cases cited by USA Today in support of its argument that the Court should not consider

Defendants' reasons for the policy change as stated in pleadings and motions subsequent to Defendants' answer are distinguishable from the case at bar for the reasons provided in Defendants' reply brief.

it is relevant to the case at bar. Therefore, Defendants' motion as to Request No. 15 is denied.

The Court finds that USA Today was substantially justified in its opposition to Defendants' motion; therefore, the Court will not award expenses.

**E. USA Today's Motion for Protective Order**

USA Today urges this Court to enter a protective order preventing the deposition of USA Today's Rule 30(b)(6) designee on the grounds that the subject matter of the noticed deposition duplicates objectionable matter contained in Defendants' Motion to Compel. As of the Court's entry of this order, Defendants' Motion to Compel has been decided. In its brief in support of its motion for protective order, USA Today agreed to provide the Rule 30(b)(6) witness for deposition in the event that the Court found the subject matter of Defendants' motion to compel discoverable.

Defendants notice covers three topics: (1) commissions or payments by USA Today or GANSAT to newsstand concessionaires at the Atlanta Airport related to newspaper sales through newsstands or newspaper sales through newsracks during the period from 1980 through 1996, (2) newsrack sales of USA Today newspapers at the Atlanta Airport during the period from 1980 through 1996, and (3) agreements with concessionaires at the Atlanta Airport concerning the sale of USA Today newspapers through newsracks or through newsstands during the period from 1980 through 1996. Defendants' notice covers information relevant to the subject matter of the pending action. However, the topics covered are overbroad. Consequently, the topics stated in Defendants' notice must be limited to the period of January 1, 1995 to present.

■■] As to the confidential nature of the information sought, Defendants submitted to USA Today a proposed protective order. In response, USA Today rejected the "blanket confidentiality agreement" as unnecessary, but suggested that issues of confidentiality be addressed on an item by item basis. See Defendants' Response to USA Today's Motion for Protective Order, Exhibit 2. In addi-

tion to its brief in support of its motion for protective order, USA Today refers the Court to its Response to Defendants' Motion to Compel. However, neither brief filed by USA Today fully addresses the confidentiality objection raised by USA Today. USA Today failed to demonstrate good cause necessary for issuance of a protective order. Therefore, USA Today's Motion for Protective Order must be denied to the extent USA Today refuses to submit for deposition its Rule 30(b)(6) designee. USA Today is directed to submit its Rule 30(b)(6) designee for deposition as to the subject matters contained in Defendants' notice but limited in scope by the rulings of the Court in Defendants' Motion to Compel. The Court will not award expenses.

## III. CONCLUSION

In Case No. 1:96–CV–1738, Defendants' Motion to Dissolve Preliminary Injunction [47–1] is **DENIED**. Plaintiff USA Today's Motion for Attorneys' Fees [55–1] is **GRANTED**. Plaintiff USA Today's Motion to Compel [68–1] is **GRANTED in part and DENIED in part**. Plaintiff USA Today's Motion for Protective Order [67–1] is **DENIED in part and GRANTED in part**.

As to Case No. 1:96–CV–1847, Defendants' Motion to Compel [22–1] is **GRANTED in part and DENIED in part**. Defendants' Motion to Dissolve Preliminary Injunction [28–1] is **DENIED**. Plaintiff USA Today's Motion for Attorneys' Fees [34–1] is **GRANTED**. Plaintiff USA Today's Motion for Protective Order [43–1] is **DENIED in part and GRANTED in part**. Plaintiff USA Today's Motion to Compel [44–1] is **GRANTED in part and DENIED in part**.

The parties are directed to comply with the Court's discovery rulings within 15 days of the date of docketing of this Order. If necessary, the parties may supplement their motions for summary judgment by submitting additional evidence within 30 days of the docketing of this Order. Although the proposed plan may require additional discovery, discovery will not be reopened unless and until mediation is complete. In the event that the parties are unable to reach a resolution in mediation, the parties are directed to submit a proposed consolidated scheduling order for discovery of the proposed plan.

Plaintiffs have mentioned in their briefs an effort to negotiate regarding the proposed plan. However, Defendants were not receptive to negotiation at that time. In the present posture of the case, negotiation should be an attractive alternative for all parties. Substantial costs may be incurred for discovery related to the proposed plan and for the litigation which will follow. The findings contained in this Order provide direction to the parties about the scope of authority of the Department to reasonably regulate newsracks in the Airport which should facilitate meaningful negotiation. The Court is confident that it is in the best interests of all parties to reach an agreed-upon resolution concerning the proposed plan. Therefore, **IT IS FURTHER ORDERED,** that the parties submit *all* pending issues to a mediator for resolution. The parties have 30 days from the date of docketing of this Order to complete mediation. The parties are ordered to select a mediator within 10 days of the docketing of this order. If the parties cannot agree on the selection of a mediator, the parties are directed to notify the Court within the time provided for selection of a mediator. Upon notification, the Court will appoint a mediator.