[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-16721
_____

D. C. Docket No. 96-01738 CV-RWS-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 15, 2006
THOMAS K. KAHN

ATLANTA JOURNAL AND CONSTITUTION,
USA TODAY,

Plaintiffs-Appellees,

versus

THE CITY OF ATLANTA DEPARTMENT OF AVIATION,

Defendant-Appellant.

_____

No. 04-16723
_____

D. C. Docket No. 96-01847 CV-RWS-1

USA TODAY, a division of Gannett Satellite
Information Network ("GANSAT"), Inc.,
NEW YORK TIMES COMPANY,
d.b.a. The New York Times,

Plaintiffs-Appellees,

versus

CITY OF ATLANTA DEPARTMENT OF AVIATION,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

**(March 15, 2006)**

Before DUBINA, MARCUS and COX, Circuit Judges.

COX, Circuit Judge:

These consolidated cases arise out of a dispute between the City of Atlanta Department of Aviation ("the Department"), on one hand, and publishers of The Atlanta Journal-Constitution, USA Today and The New York Times newspapers ("the publishers") on the other hand. In 1996, the Department, which operates Atlanta Hartsfield-Jackson Airport, sought to implement a plan regulating the design, placement, rental, and allocation among publishers of newsracks in the airport. The publishers filed suit, opposing the plan on First Amendment grounds. For a time, the district court enjoined implementation of the Department's newsrack plan. *See Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation ("AJC I")*, 6 F. Supp. 2d 1359, 1363, 1366 (N.D. Ga. 1998). The Department appealed the injunction; and, ultimately, the en banc court affirmed

2

the portions of the injunction that restrained the Department from forcing publishers to use newsracks bearing advertisements for other products and from granting unbridled discretion to those persons responsible for selecting which publications may be placed in newsracks or which publishers may continue to maintain newsracks at the airport; vacated that portion of the injunction that prevented the Department from charging the publishers a rental or use fee that was revenue-raising; and remanded the case with instructions to the district court to allow the Department to formulate a plan consistent with the modified injunction. *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation ("AJC IV")*, 322 F.3d 1298,1312 (11th Cir. 2003) (en banc). The en banc court also said that the district court should consider any claim the Department might have for fees that it had been enjoined from collecting. *Id.*

On remand, the Department pursued a claim for restitution of the fees it had been unable to collect because of the injunction. And the publishers petitioned the district court for attorneys' fees and costs pursuant to 42 U.S.C. § 1988. The Department brings this appeal attacking the judgment of restitution in its favor and the award of attorneys' fees and costs for the publishers. We conclude that the district court did not abuse its discretion in computing the restitutionary award or in awarding attorneys' fees and costs. We therefore affirm.

3

# I. FACTUAL & PROCEDURAL BACKGROUND

In 1996, in preparation for the Summer Olympic Games, the Department formulated a plan to regulate the sale of newspapers through newsracks in Atlanta Hartsfield-Jackson Airport. Had it been implemented, the 1996 plan would have governed the placement and allocation among publishers of newsracks in the airport, required use of Department-provided newsracks that displayed Department-selected advertising, and charged the publishers rent of $20.00 per newsrack per month. The publishers filed a lawsuit in federal district court challenging the 1996 plan on First Amendment grounds, and they were granted a preliminary injunction against its implementation. The preliminary injunction was subsequently clarified, modified and extended in duration.

In July 1997, the Department moved to dissolve the preliminary injunction and filed a new plan to be implemented once the injunction was dissolved. The 1997 plan proposed a rent of $32.40 per month for the use of Department-owned newsracks and $27.40 per month for placement of publisher-owned newsracks. In October 1997, while the preliminary injunction was still in force, the parties filed cross-motions for summary judgment concerning the 1996 plan. In June 1998, the district court denied the Department's motion to dissolve the preliminary injunction and declined to consider the 1997 plan because it found that the 1997

4

plan was not properly at issue in the litigation. *AJC I*, 6 F. Supp. 2d at 1364-66.

In finding that it could not properly review the 1997 plan, the district court found

that the pleadings had not been amended to put the 1997 plan at issue and that

discovery on the constitutionality of the 1997 plan might be necessary. *Id.*

In July 2000, after court-ordered mediation and other settlement

negotiations failed to resolve the case, the district court ruled on the cross-motions

for summary judgment. The district court declared the 1996 plan unconstitutional

and issued a permanent injunction that barred the Department from:

> (1) forcing publishers to use newsracks bearing
> advertisements for other products;
> (2) requiring publishers to pay a fee that was not tied to
> the Department's costs in administering the newsrack
> plan but was instead revenue-raising; and
> (3) vesting unbridled discretion in the person or persons
> responsible for selecting which publications may be
> placed in newsracks or which publishers may continue to
> maintain newsracks at the airport.

*See Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation ("AJC*

*II")*, 107 F. Supp. 2d 1375, 1384 (N.D. Ga. 2000).

The Department appealed, contending that the 1996 plan was constitutional

in all respects. A three-judge panel of this court affirmed the district court but

noted that its holding on the second prong of the injunction (dealing with the fees

charged publishers) was dictated by circuit precedent that the court might consider

5

revisiting en banc. *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation ("AJC III")*, 277 F.3d 1322, 1329 (11th Cir. 2002).

The court did rehear the case en banc. In February 2003, the en banc court affirmed the district court on the first and third prongs of the injunction but reversed as to the second prong, holding that the Department could charge licensing fees that were revenue-raising because the Department was acting in a proprietary capacity, rather than a regulatory capacity. *AJC IV*, 322 F.3d 1298. The en banc court decided that "the Department can impose a profit-conscious fee on the use of newsracks in the Airport, but . . . the discretion surrounding such fee must be restrained through procedures or instructions designed to reduce or eliminate the possibility of viewpoint discrimination." *Id.* at 1312. The cases were remanded to the district court for formulation of a plan incorporating these restrictions. The court said: "Upon remand, the district court should not be precluded from considering the City's claim, if any, for lost revenues from enjoined fees that we have determined were constitutionally permissible . . . ." *Id.*

On remand, the Department submitted a new newsrack plan to the district court. The district court found that this new 2003 plan was not violative of the permanent injunction, as modified by the Eleventh Circuit's en banc opinion. The

6

district court then addressed the Department's request for restitution and the publishers' requests for attorneys' fees and costs.[1]

The district court granted the Department restitution for the rent it was prevented from collecting because of the injunction, calculated at $15 per newsrack per month (the $20 rental fee in the 1996 plan minus a $5 "cost recovery" fee because the publishers provided the newsracks themselves rather than using racks provided by the Department), plus simple interest at 7% per annum. *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation ("AJC V")*, 347 F. Supp. 2d 1310, 1318 (N.D. Ga. 2004). The restitution ordered was: $240,072.60 from The Atlanta Journal & Constitution; $18,771.60 from The New York Times; and $90,801.39 from USA Today. *Id.*

The district court also found that the publishers were "prevailing parties" under 42 U.S.C. § 1983 and awarded the publishers attorneys' fees and costs pursuant to 42 U.S.C. § 1988. However, the court limited these awards to 80% of the fees and costs incurred, in consideration of the fact that the Department had prevailed on the issue of whether it could charge revenue-raising rental fees. *Id.* at

[1]The Department requested back rent for the period during which the injunction was in force. The Department sought restitution based on three rental rates: $20 per newsrack per month from July 1, 1996 to July 31, 1997 plus interest (based on the 1996 plan); $27 per newsrack per month from August 1, 1997 to September 30, 2003 plus interest (based on the 1997 plan); and $30 per newsrack per month from October 1, 2003 plus interest (based on the 2003 plan).

1326. The attorneys' fees and costs awarded by the district court were: $678,487.80 to The Atlanta Journal & Constitution; $16,200.28 to The New York Times; and $659,016.38 to USA Today. *Id.*

## II. ISSUES ON APPEAL & CONTENTIONS OF THE PARTIES

The Department raises two issues on appeal: (1) whether the district court committed reversible error in ordering restitution calculated at $15 per month per newsrack; and (2) whether the district court committed reversible error by awarding the publishers 80% of their attorneys' fees and costs.

The Department argues that both the restitution and attorneys' fee awards rest on an erroneous factual finding by the district court–that, during the course of the litigation, the Department could have withdrawn the 1996 plan and implemented a new plan that addressed the constitutional problems with the 1996 plan. The Department contends that this factual finding is clearly erroneous because it fails to account for the restrictions placed upon the Department by the preliminary and permanent injunctions themselves, in particular the restriction against implementation of a plan that would charge a revenue-raising fee. The Department further argues that the attorneys' fees and costs awarded to the publishers were not discounted sufficiently to account for the Department's success on what it now argues was the main issue in the case–whether the

Department could charge a reasonable revenue-raising fee for use of the newsracks.

The publishers answer that the district court did not abuse its discretion in calculating the restitutionary award of back rent nor in awarding the publishers 80% of their attorneys' fees and costs. They argue that the Department's appeal is basically a request for this court to reverse the district court's 1998 ruling that the Department had not put any plan other than the 1996 plan at issue in the litigation. The publishers also contend that the Department's continued defense of the 1996 plan in its entirety, throughout the course of the litigation, and the resulting decision of the en banc court, affirming in part the permanent injunction, demonstrate that there were important disputed issues other than the revenue-raising fee in this case and that the publishers were successful in achieving constitutional protections for themselves and others similarly situated.

### III. STANDARDS OF REVIEW

Restitution is an equitable remedy. We review the district court's decision to grant or deny equitable relief for abuse of discretion, reviewing underlying questions of law de novo and findings of fact upon which the decision to grant equitable relief was made under the clearly erroneous standard. *Preferred Sites,*

*LLC v. Troup County*, 296 F.3d 1210, 1220 (11th Cir. 2002) (citing *United States v. Gilbert*, 244 F.3d 888, 908 (11th Cir. 2001)).

We also review the district court's award of attorneys' fees and costs for abuse of discretion, revisiting questions of law de novo and reviewing subsidiary findings of fact for clear error. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000) (citing *ACLU v. Barnes*, 168 F.3d 423, 427, 436 (11th Cir. 1999)).

## IV. DISCUSSION

### A. Restitution

The Department takes issue with what it considers to be a low restitutionary award. It argues that it should have been awarded higher rents for periods when it would have increased the monthly rent for newsracks but for the injunction.[2] The Department contends that the district court's award is an abuse of discretion because it rests on a clearly erroneous finding of fact–that the Department could have raised the monthly rent above the rate in the 1996 plan during the course of the litigation but did not do so.

---

[2]The Department makes no argument on appeal about the prejudgment interest ordered by the district court. Neither does the Department take issue with the district court's deduction of $5 from the $20 rental rate because the publishers provided newsracks themselves rather than using racks provided by the Department. The Department's only complaint regarding the restitution is that the $20 rental rate chosen by the district court is too low.

A review of the district court's order reveals that it adheres to the principle that the Department is entitled to restitution of the rent that the Department was actually enjoined from charging, namely the $20 per month per newsrack rent proposed by the enjoined 1996 plan. *AJC V*, 347 F. Supp. 2d at 1317. The district court properly relied on Supreme Court precedent and the law of this case in finding that this was the appropriate measure for the restitution. *See id.* (citing *Arkadelphia Milling Co. v. St. Louis S.W. R. Co.*, 249 U.S. 134, 145, 39 S. Ct. 237, 242 (1919); *AJC IV*, 322 F.3d at 1312).

Responding to the Department's argument that the rent the Department was enjoined from collecting was not only the rent at the rate proposed in the 1996 plan but also any increased rent that the Department would have sought had it been able to institute new plans for newspaper distribution, the district court found that the only object of the injunction was the 1996 plan (which contained a $20 per newsrack per month rent), not any contemplated plan that was never before the court. In support of this finding, the district court stated that the Department could have put a revised plan with an increased rental rate at issue in the litigation but did not.[3] *Id.*

---

[3]This factual finding is not clearly erroneous; indeed, it is supported by the district court's 1998 order denying the Department's motion to dissolve the preliminary injunction. In that order, the district court held that the 1997 plan was not properly before the court and all but invited the

Put simply, the basic problem with the Department's argument on appeal is that the district court did not find, as the Department asserts, that the Department's failure to implement a new plan prevented it from receiving restitution at a new plan's rate. Rather, the district court found that the Department's failure to put a new plan (including a new rental rate) at issue in the litigation, to be considered (and possibly enjoined) by the court prevented it from receiving restitution at a new plan's rate. In order for restitution to be due, the collection of the rent must have been thwarted by the judicial error of an unwarranted injunction. The district court found that only the rent proposed in the 1996 plan had been enjoined. This is not a clearly erroneous finding.

The district court also considered other factors in determining the amount of the restitution. The district court found that allowing restitution in an amount greater than that proposed by the 1996 plan would constitute a retroactive rate increase to the publishers; the district court considered such an increase inappropriate. *Id.* at 1317. And the district court considered (and rejected) arguments by the publishers that the equities did not support a restitutionary award

litigants to put a new plan at issue in the litigation, even instructing them on the proper procedural mechanisms to do so. *AJC I*, 6 F. Supp. 2d at 1364 ("Because Plaintiffs' [sic] did not amend their complaints to challenge the constitutionality of the proposed plan and Defendants did not assert a counterclaim for declaratory judgment on the constitutionality of the proposed plan . . . the constitutionality of the proposed plan is not ripe for review.").

at all or that, if restitution were ordered, it should be limited to 11% of the publishers' revenues–the rate paid by other vendors in the airport. In rejecting these arguments by the publishers, the district court deferred to the holding in this court's en banc opinion that the $20 per month per newsrack rate was reasonable and constitutionally acceptable.[4] *Id.* at 1318.

All of these are appropriate considerations upon which the district court properly based its award of restitution. It must be remembered that restitution is an equitable remedy. The district court did not abuse its discretion in determining that the equities dictate a restitutionary award of back rent in the amount of $15 per month per newsrack (the 1996 plan's rental rate of $20 minus the $5 "cost recovery" fee). Therefore, we find no error in the judgment of restitution.

### B. Attorneys' Fees & Costs

Ruling on the publishers' motions for attorneys' fees, the district court engaged in a familiar three-step process: first, it determined that the publishers had "prevailed" in the litigation; then, it calculated the "lodestar," the number of hours

---

[4]Reviewing the fee proposed by the 1996 plan, the en banc court stated, "the fee is facially reasonable; it does not appear that the Department is applying monopolistic muscle to the publishers." *AJC IV*, 322 F.3d at 1309. The court found that the flat fee imposed by the 1996 plan was not "dramatically out of proportion" to the fees that previously had been charged publishers. *Id.* Thus, it is apparent that this court reviewed not only the constitutionality of a revenue-raising fee in the abstract but also the reasonableness of the $20 per month per newsrack rent proposed by the 1996 plan.

reasonably expended in the legal work on the case multiplied by a reasonable hourly rate for the services; finally, it adjusted the lodestar to account for the results obtained by the publishers. *See AJC V*, 347 F. Supp. 2d at 1319 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1937 (1983)). As a part of the third step in this process, the district court considered the Department's ultimate success on the issue of the permissibility of a revenue-raising fee and therefore determined that the publishers had achieved limited success on their claims, all of which involved a common core of facts. *See id.* at 1321, 1323.

In appealing the attorneys' fees and costs awarded the publishers, the Department does not take issue with the finding that the publishers were prevailing parties, with the lodestar calculation, with the finding that the publishers' claims arose from a common core of facts, or with the finding that the publishers' success is appropriately described as "limited." Rather, the Department's contention is that the district court overvalued the relief achieved by the publishers in this lawsuit. The Department argues that the district court should have limited the award to those fees and costs incurred by the publishers through July 11, 1996, the date the preliminary injunction issued.[5] Alternatively, the

---

[5]The Department's choice of the preliminary injunction date as a cut-off date for attorneys' fees is not explained in its appellate briefs. This mid-1996 date is particularly perplexing in light of the Department's admission that it did not even formulate a new plan (which it maintains was

14

Department argues that, even if the publishers are entitled to recover from the Department some fees and costs that the publishers incurred after the preliminary injunction, the district court's decision to reduce the award of total fees and costs of the publishers by only 20% is reversible error because it does not sufficiently account for the importance of the issue on which the Department, not the publishers, prevailed.

The district court found that, despite the Department's ultimate success on the issue of the revenue-raising fees, the publishers' successes with respect to the other two prongs of the permanent injunction conferred substantial public benefit. *See id.,* at 1322-23. We agree that the publishers "succeeded in securing . . . vital first amendment guarantees not only for themselves but also for the public in general." *Id.* at 1323 (citing *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1308 (11th Cir. 2001)). The publishers were successful in resisting the Department's plan to unconstitutionally force them (and other newspaper publishers) to display Department-determined advertising on the newsracks in the airport. Plaintiff publishers were also successful in protecting themselves and

constitutional but was never considered by any court) until 1997. As discussed below, the Department continued to assert and litigate the constitutionality of all aspects of the 1996 plan well beyond the imposition of the preliminary injunction. Thus, we reject the Department's invitation to limit its liability for the publishers' fees and costs to those incurred in the preliminary injunction stage of the litigation.

15

other newspaper publishers from the unconstitutionally boundless discretion of a Department official who, under the 1996 plan, would have determined which publishers could use which (if any) newsracks in the airport. As the district court recognized, we consider vindication of a constitutional right against a municipal defendant an important measure of success. *See Villano*, 254 F.3d at 1307. Thus, we agree with the district court that the publishers' success was significant.

In further support of the fee award, the district court found that the Department continued to litigate the constitutionality of all aspects of the 1996 plan well beyond the imposition of the preliminary injunction. *See AJC V*, 347 F. Supp. 2d at 1325-26. The district court found that the Department's belated claims that it had been willing to compromise on all issues except the revenue-raising fee are belied by the record. That finding has support in the record. At no point in the litigation, in the district court or in this court, did the Department concede that any aspect of the 1996 plan was improper or that any prong of either injunction issued by the district court was valid. The en banc court explicitly acknowledged these facts. *AJC III*, 277 F.3d at 1326 n.1 ("The City has never officially withdrawn any aspect of the 1996 plan, never represented that it has abandoned this [mandatory advertising] aspect of the plan, nor conceded that it unconstitutionally compelled speech."). The district court considered the

16

Department's litigation strategy to be "stubborn and contentious," *AJC V*, 347 F. Supp. 2d at 1323; and the district court found that, by continuing to litigate all aspects of the 1996 plan in the district court and on appeal, the Department was "largely responsible for the long duration of the litigation and mounting attorneys' fees." *Id.* at 1326. We cannot say that these findings are clearly erroneous.

In light of the constitutional successes achieved by the publishers on behalf of themselves and others and the litigation tactics of the Department, we hold that the district court did not abuse its discretion in ordering the Department to pay 80% of the publishers' attorneys' fees and costs.

## V. CONCLUSION

The judgment awarding restitution is affirmed and the judgment awarding attorneys' fees and costs is affirmed.

AFFIRMED.